IN THE UNTED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HAROLD TUNNELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-23-55-GLJ ) |
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

# ORDER

Plaintiff Harold Tunnell alleges claims for breach of contract and tortious bad faith arising out of an insurance policy claim he held with Defendant State Farm Fire & Casualty Company.  This matter is presently before the Court on motion for summary judgment by Defendant.  For the reasons set forth below, the Court finds that Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment and Brief in Support [Docket No. 54] should be GRANTED.

**Procedural History**

Plaintiff filed the original Oklahoma state court petition in this case on November 7, 2022, in McCurtain County District Court, Case No. CJ-22-111, and Defendant removed the case to this Court on February 13, 2022, within thirty days of proper service at the state court level. *See* Docket Nos. 1-2.  In this diversity action, Plaintiff's state court Petition appears to allege two Oklahoma state law claims as follows:  (i) breach of contract related to an insurance contract, and (ii) breach of the duty of good faith and fair dealing, *i.e.*, bad

faith [Docket No. 2, Ex. 1].[1]  Defendant moved for summary judgment on May 28, 2024 [Docket No. 54], and the motion is now ripe.

## Law Applicable

"Whether summary judgment should [be] granted in this federal diversity case is [] governed by the standard found in the Federal Rules of Civil Procedure as applied to Oklahoma's substantive law." *Taber v. Allied Waste Sys., Inc.*, 642 Fed. Appx. 801, 812 n.2 (10th Cir. 2016) (*citing C.F. Braun & Co. v. Okla. Gas & Elec. Co.*, 603 F.2d 132, 133 n.1 (10th Cir. 1979) ("The propriety of summary judgment in federal diversity cases must be evaluated in light of the Federal Rules of Civil Procedure rather than state procedural law, but with reference to the state's substantive law.")).  Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157

---

[1] The Court notes that the present form of Plaintiff's state court Petition is improperly drafted under the Federal Rules of Civil Procedure, as each claim should have been clearly and separately set forth to prevent misunderstandings, rather than both claims alleged in the same paragraph as is the case here. *See, e.g., Park v. TD Ameritrade Tr. Co.*, 2010 WL 4608225, at *2 (D. Colo. Nov. 5, 2010) ("[A]s a structural matter, the Title VII Complaint is deficient because it purports to assert multiple claims for relief within each 'Claim for Relief.' ... This format, which is repeated in Claims Three, Four, and Six, is improper under Rule 8 of the Federal Rules of Civil Procedure.").

2

(1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

## I.     Factual Background

The undisputed facts reflect Plaintiff owns property in Broken Bow, Oklahoma, which was insured by Defendant, as relevant, from December 16, 2018, through December 16, 2019. Docket No. 54, p. 8, ¶ 1. The policy was in effect on April 6, 2019,[2] the claimed date of loss. *Id.*, ¶ 2. The policy covered accidental direct physical loss to the property. *Id.*, ¶ 4. The policy contains numerous provisions, the most relevant here stating, "**Suits against us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage. However, if the cause of loss or damage is burglary, theft, larceny, robber, forgery, fraud, vandalism, malicious mischief, confiscation, wrongful conversion, disposal or concealment, the action must be started within two years from the time the cause of action accrues."

On April 8, 2019, Plaintiff reported a hot water tank leak as a property loss under the policy. *Id.*, p. 10, ¶ 11. Based on Plaintiff's election of the State Farm Premier Service Program, ServPro was engaged to provide mitigation services. *Id.*, ¶ 13. On April 12,

---

[2] Defendant's undisputed facts state the claimed date of loss was April 16, 2019, but this appears to be a typographical error, as elsewhere Defendant describes Plaintiff's discovery of a hot water tank leak on April 6, 2019. *See* Docket No. 54, pp. 6; 10, ¶ 9; 16. In any event, both dates are covered under the Policy.

2019, upon questioning, ServPro's initial assessment was that the amount of damage would be expected based on the how long the water had remained after the leak. *Id.*, pp. 10-11, ¶ 14 & Ex. 3, p. 8. On April 15, 2019, ServPro informed State Farm that the subflooring had existing rot, which portion of damage was not a covered loss.[3] *Id.*, Ex. 3, p. 7. State Farm adjuster Scott Allen went to the property for an inspection on April 17, 2019. *Id.*, p. 5. Plaintiff contends the inspection was inadequate. Docket No. 64, pp. 9-10, ¶¶ 18-19. On that day, Mr. Allen communicated that the existing rot, mold, or fungus in the subflooring would not be covered. Docket No. 53, Ex. 3, p. 5. On April 22, 2019, notes reflect Defendant again informed Plaintiff that rot, mold, and fungus were losses not covered, and that Plaintiff would therefore be responsible for the subfloor and underlayment. *Id.*, pp. 4-5. Further claim file notes reflect Defendant informed Plaintiff of the losses not covered on April 23 and again on April 24. *Id.*, p. 4. On April 27, 2019, Defendant issued payment in the amount of $6,574.13 for its calculation of the covered loss, and sent a claim decision letter informing Plaintiff that an additional $1,049.72 was available in replacement cost benefits upon completion of repairs, which needed to be done within two years. Docket No. 54, p. 13, ¶ 25 & Ex. 9. By May 2019, Defendant determined no subrogation was available, and Defendant closed the claim file on July 23, 2019. Docket

---

[3] Plaintiff disputes this fact, asserting ServPro had already stated on April 12, 2019, that the water heater failure caused all the damage. Docket No. 64, p. 9, ¶ 15. It is not clear what Plaintiff disputes, as the claim file specifically notes that ServPro "informed apparent exisitng [sic] rot in subflooring." Docket No. 53, Ex. 3, p. 7. It appears Plaintiff is arguing ServPro could not change its assessment and/or that Defendant should have relied on the initial April 12 assessment and refused to go back from that point forward. In any event, the Court relays the information from the claim file, and Plaintiff has provided no evidence that the April 15 statements in the claim file were manufactured (but not the April 12 statements).

4

No. 54, Ex. 3, p. 3. Defendant testified at his deposition that he called Defendant sometime in 2022 to find out if his claim was still open. *Id*, Ex. 2, p. 13. Defendant filed suit on November 7, 2022. *See* Docket Nos. 1-2 & Exs.

## II.   Analysis

Breach of Contract. Plaintiff's first claim for relief alleges breach of contract as to the insurance policy issued by Defendant on behalf of Plaintiff. "Because this is a diversity case governed by Oklahoma law, 'we ascertain and apply Oklahoma law such that we reach the result that would be reached by an Oklahoma court.'" *Ritch v. Carrabbas Italian Grill L.L.C.*, 719 Fed. Appx. 838, 840 (10th Cir. 2018) (quoting *Martinez v. Angel Expl., LLC*, 798 F.3d 968, 973 (10th Cir. 2015)). Defendant contends Plaintiff's claim for breach of contract is time-barred. Under Defendant's Policy, Defendant limited suits to claims brought within one year after the date of loss or damage. Docket No. 54, p. 9, ¶ 8 & Ex. 1, p. 39, ¶ 6 ("Any action by any party must be started within one year after the date of loss or damage.").[4] Defendant's Policy appears to comply with Oklahoma law, which states that "in property . . . policies such time shall not be limited to less than one (1) year from the date of occurrence of the event resulting in the loss." 36 Okla. Stat. § 3617. Plaintiff disputes the emphasis Defendant used as to this language in its statement of undisputed facts, asserting the language is not in bold or italics, he was unaware of or did not read the provision when he applied for the policy, and he was not given a choice in this provision when he applied for and accepted the policy. *See* Docket No. 64, p. 8, ¶ 8.

---

[4] The Policy provides certain exceptions to this which do not apply here, including burglary, theft, and larceny, which would extend the time to two years from the accrual date. *Id.*

5

Defendant argues that Plaintiff filed suit 31 months too late, as the date of loss was April 6, 2019, the one-year deadline was April 6, 2020, and Plaintiff filed this case in state court on November 7, 2022, *i.e.*, 31 months and one day later. Plaintiff responds in summary fashion that his claims were tolled under the discovery rule and due to fraudulent concealment by Defendant. He asserts State Farm concealed material facts, specifically, that the Servpro agent told Defendant that the subfloor damage, including rot, was in line with the hot water tank leak and reported date of loss (and therefore should be covered), which contrasts with Mr. Allen, who stated that the rot, mold, or fungus would not be covered while the damaged flooring and mitigation would be covered. He therefore contends material questions of fact remain on the issue of fraudulent concealment.

Under Oklahoma law, "[a]n action for breach of contract accrues when the contract is breached, not when damages result[,]", and it accrues "regardless of whether the plaintiff knows, or in the exercise of reasonable diligence, should have known of the breach." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 2021 OK 27, ¶¶ 25, 31, 488 P.3d 743, 750, 73. However, "Oklahoma has long recognized fraudulent concealment as an implied exception to a statute of limitations. If a defendant fraudulently conceals material facts and thereby prevents a plaintiff from discovering his wrong or the fact that a cause of action has accrued against him, the limitations period is tolled." *Id.*, 2021 OK 27, ¶ 32, 488 P.3d at 753 (citing *Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, ¶ 18, 195 P.3d 48, 54-55). "[F]raudulent concealment is typically raised as a response to a statute of limitations defense, rather than as a separate claim for relief. *AG Equip. Co. v. AIG Life Ins. Co.*, 2008 WL 4570319, at

\*3 (N.D. Okla. Oct. 10, 2008) (citing *Kansas City Life Ins. Co. v. Nipper,* 1935 OK 1127, ¶ 32, 51 P.2d 741, 747).

"The 'doctrine of fraudulent concealment' tolls the running of a statute of limitations when the defendant has prevented the plaintiff from timely discovering the breach of a duty, and requires a plaintiff to show: (1) the use of fraudulent means by the party who raises the ban of the statute [of limitations]; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of due diligence could not have known that he might have a cause of action." *Shoemaker Corp. III, Inc. v. Garrett*, 2023 WL 8358004, at \*21 (N.D. Okla. Dec. 1, 2023) (quotations and citations omitted). "In order for fraudulent concealment to toll the limitations period, however, the defendant must have 'commit[ted] some actual artifice to prevent knowledge or some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry. . . .' Additionally, 'the mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute.'" *Legacy Crossing, L.L.C. v. Travis Wolff & Co., L.L.P.*, 229 Fed. Appx. 672, 681 (10th Cir. 2007) (quoting *Wills v. Black & West, Architects*, 1959 OK 162, ¶ 13, 344 P.2d 581, 584).

Plaintiff bears the burden to provide evidence of fraudulent concealment sufficient to withstand a motion for summary judgment. *Williams v. Borden, Inc.,* 637 F.2d 731, 739 (10th Cir. 1980). He "must 'not only show that he did not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts.'" *Wells v. Johnson & Johnson*, 554 F. Supp. 3d 1207, 1212 (W.D. Okla. 2021) (quoting *Masquat*, 2008 OK 67, ¶ 18, 195 P.3d at 55 (quoting *Kansas City Life Ins. v. Nipper*, 1935 OK 1127,

7

¶ 0, 51 P.2d 741 (Syllabus No. 9)). "Regardless of whether a plaintiff has 'exact knowledge,' tolling resulting from fraudulent concealment ends 'when the plaintiff knows, or reasonably should know, of enough critical facts about the injury and its cause to protect himself or herself by seeking legal assistance.'" *Lewis v. Wal-Mart Stores, Inc.*, 2005 WL 3263377, at *8 (N.D. Okla. Dec. 1, 2005) (quoting *Tice v. Pennington*, 2001 OK CIV APP 95, ¶ 30, 30 P.3d 1164, 1171). Moreover, "[t]he mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute. There must be something more; some actual artifice to prevent knowledge of the fact; some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry." *Nipper*, 1935 OK 1127, ¶ 32, 174 Okla. 634, 51 P.2d 741, 747 (quotation omitted) ("It was the duty of plaintiff to exercise some degree of diligence and make some effort to learn her rights and not close her eyes and depend solely upon her adversary informing her of her rights.").

Plaintiff alleges by way of affidavit that he did not read and was not made aware of the provision in the policy limiting suits to being brought within one year, and he had no choice in the policy language. *See* Docket No. 64, Ex. 4, p.1. Additionally, he alleges that he found out after filing this case and during the discovery process that ServPro told State Farm that the floor and subfloors had both been damaged by the water heater failure, and that there was a "discrepancy" between the ServPro opinion and State Farm Adjuster opinion as to the cause of loss on the subfloor. *Id.*, pp. 1-2. Further, he alleges he was never informed that rot could be covered under the policy if it resulted from a covered loss such as the water heater failure. *Id.*, p. 2. At his deposition, Defendant testified that he had a verbal quote of $30,000 to $48,000 to fix the damage in his home, but that he could

not remember the name of the company, and the contractor did not want the job and would not write up an estimate. *See* Docket No. 54, Ex. 2, pp. 9-12. Other than that person for whose opinion and/or estimate there is no documentation, Defendant had no one else outside ServPro and the State Farm adjuster come to his home to inspect it, give an estimate, do any work, or do any of the repairs. *Id.*, pp. 15, 20. He simply believes the adjuster should have spent more time investigating the claim and the cause of the damage. *Id.*, p. 18.

The State Farm claim file reflects that the first day that ServPro came out, April 12, 2019, ServPro confirmed that the amount of damage seen could be expected based on how long the water had remained. *See* Docket No. 54, Ex. 3, p. 8. By April 15, 2019, the claim file reflects ServPro had noted existing rot in the subfloor. *Id.*, p. 7. After rot was discovered in the hallway after someone stepped through the floor, Defendant was notified on April 17, 2019, that rot, mold, or fungus is not a covered loss. *Id.*, p. 5.

Plaintiff contends that the difference in ServPro's initial assessment on April 12, that all damage was based on the water heater failure, and April 15, that there was existing rot in the subfloor, was not shared with him until he received the discovery in this case. Moreover, he contends State Farm did not inform him of policy language indicating that rot would be covered if it resulted from a covered loss. Notably, Plaintiff contends that State Farm's undisputed statements regarding Plaintiff's failure to contest State Farm's policy decision and failure to obtain any other examination of the subfloor are irrelevant and inappropriate attempts to delegate State Farm's responsibility for adjusting the claim. *See* Docket Nos. 54, p. 15, ¶¶ 38-40; 64, p. 13, ¶¶ 38-40.

9

Rather than attempt to establish his reasonable diligence as required under the law, Plaintiff attempts to shift his burden back to State Farm. Plaintiff's bald allegation of fraudulent concealment here fails. Plaintiff testified at his deposition that he was aware of State Farm's decision as of the April 27, 2019, letter, and that he never responded to or disputed that letter. Docket No. 54, p. 20. He further testified that he next contacted State Farm about the loss in 2022. *Id*, p. 13. By April 2019, Plaintiff knew his loss was not going to be covered, and he took no steps to ascertain any facts to contradict State Farm's decision. Indeed, he was not even aware of ServPro's initial determination until after he filed this case. Even assuming *arguendo* that State Farm's failure to communicate the two differing conclusions by ServPro (one initially and one made upon further evaluation) is, standing alone, sufficient to establish fraudulent concealment, Plaintiff fails to meet his burden to show his own reasonable diligence regarding this claim. Because Plaintiff failed to exercise reasonable diligence to ascertain facts about his loss and its cause, his claim of fraudulent concealment is insufficient to toll the statute of limitations and Defendant is entitled to summary judgment. Plaintiff's claim for breach of contract is dismissed.

Bad Faith. Defendant likewise contends that Plaintiff's claim for bad faith is time barred as it was filed outside the applicable two-year statute of limitations for such claims. *See Taylor v. State Farm Fire and Casualty Co.,* 1999 OK 44, ¶ 5 n. 10, 981 P.2d 1253, 1256 n. 10 ("Extant jurisprudence imposes a two-year limitation upon a tort claim based on bad-faith refusal to settle a claim."). *See generally* 12 Okla. Stat. § 95(A)(3). Plaintiff responds that his bad faith claim is subject to the discovery rule and the fraudulent concealment exception, asserting evidence has been uncovered in the discovery process of

this case and citing cases allowing bad faith claims where evidence was found in discovery and tolling the statute of limitations. Additionally, Plaintiff contends Defendant had a continuing duty of good faith and fair dealing that can extend even beyond the initiation of litigation, and that State Farm failed to conduct an adequate investigation and still has not adequately investigated his loss.

"The discovery rule, as interpreted by the Oklahoma Supreme Court and [the Tenth Circuit], tolls the limitation period only until a plaintiff learns of an injury and, through prudent investigation, can obtain sufficient facts to state a cause of action." *Erikson v. Farmers Group, Inc.,* 151 Fed. Appx. 672, 676 (10th Cir. 2005). "Even under the discovery rule, however, a plaintiff is required to pursue claims with diligence." *Ryals v. State Farm & Cas. Co.*, 2008 WL 4542886, at *2 (N.D. Okla. Oct. 7, 2008) (citing *Daugherty v. Farmers Coop. Ass'n,* 1984 OK 72, ¶ 12, 689 P.2d 947, 951). As with Plaintiff's breach of contract claim, Plaintiff is required to show that not only "'did [he] not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts.'" *Wells*, 554 F. Supp. 3d at 1212 (quoting *Masquat*, 2008 OK 67, ¶ 18, 195 P.3d at 55) (quoting *Nipper*, 1935 OK 1127, ¶ 0, 51 P.2d at 742 (Syllabus No. 9)). Plaintiff simply asserts that he did not know enough until the discovery process began, and specifically disavows any responsibility for exercising reasonable diligence. Instead, he asserts Defendant is improperly delegating its own responsibility. It is undisputed that Defendant issued payment of $6,574.13 to Plaintiff on April 27, 2019, allowing for a further $1,049.72. *See Chasteen v. UNISIA JECS Corp.,* 216 F.3d 1212, 1217 (10th Cir. 2000) (stating that it was irrelevant whether the plaintiff understood that the defendant's actions

constituted a misappropriation of trade secrets as long as the plaintiff knew of the facts which could give rise to such a claim). While Plaintiff considers his own actions irrelevant, his assertions indicate a misapprehension of the law. Plaintiff had no further contact with Defendant as to this claim after April 2019 until some time in 2022, and he hired no others to investigate the damage to his home. He was aware by the end of April 2019 that Defendant would not be covering all the damage discovered in his home. *See, e.g.*, *Terry v. Health Care Serv. Corp.*, 2023 WL 7105576, at *7 (10th Cir. Oct. 27, 2023) ("[A]s we have explained, Plaintiff certainly was cognizant that BCBSOK was not going to fulfill her demands by the time RMH commenced garnishment proceedings against her in February 2016 [and did not file suit until April 2018]."). "[A] plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004). Plaintiff's bad faith claim accrued no later than April 2019, the statute of limitations expired in April 2021, and Plaintiff has established no grounds for tolling. Accordingly, the Oklahoma two-year statute of limitations bars this claim. *See Mid-Continent Cas. Co. v. KCHM, Inc.*, 2020 WL 13866271, at *4 (E.D. Okla. Dec. 21, 2020) ("In the context of bad faith denials of insurance coverage, the statute of limitations begins to run when the claim for insurance coverage is denied.") (citing *Blue v. Universal Underwriters Life Ins. Co.*, 612 F. Supp. 2d 1201, 1203-1204 (N.D. Okla. 2009) ("In the instant case, Plaintiff was aware of the facts which could have given rise to a claim on December 31, 2003. It is irrelevant she did not realize such conduct may have supported a bad faith claim. Plaintiff's cause of action for bad faith is therefore barred as a matter of law."); *see also Ake v. Cent. United Life Ins. Co.*, 2018 WL 5986756, at *3 (W.D. Okla.

Nov. 14, 2018) ("Plaintiff had all the facts she needed to pursue her bad faith tort regarding Mr. Ake's Provenge treatment by May 6, 2013. At the latest, Plaintiff's cause of action accrued when the Oklahoma Insurance Department responded to her Request for Assistance on July 19, 2013. Yet Plaintiff first filed this suit (in state court) on November 2, 2016—over three years after the latest possible accrual date. Thus, Plaintiff's bad faith tort regarding Defendant's denial of the Provenge claim is time-barred, and this Court GRANTS summary judgment to Defendant on this issue."). Summary judgment is therefore granted to Defendant on Plaintiff's claim for breach of the duty of good faith and fair dealing.

## CONCLUSION

Accordingly, Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment and Brief in Support [Docket No. 54] is hereby GRANTED. Defendant is entitled to summary judgment on all claims. In light of this ruling, Defendant's Motion to Exclude Testimony of Gary Layne Blagg [Docket No. 57], Plaintiff's Motion in Limine and Brief in Support [Docket No. 58], and Defendant's Omnibus Motion in Limine and Brief in Support [Docket No. 69] are all hereby DENIED AS MOOT.

DATED this 31st day of July, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**